our last case on the calendar today. In re Jane Doe, but before I clear the courtroom and before I shut off the feed, I want to make sure whether we need to do this as a sealed case at all. I would curse to be seeing these visitors that we're talking about the First Amendment right here. Right. Now, nobody has to leave. My sense is that they want to leave. No, no, I understand that. We can't make them stay. Well, we could under certain circumstances, but my point is that seeing them there reminds me that this is the First Amendment right. A subject you know something about. There must be something. There's a presumption of openness that's very strong in this court, which is not true of the Agreements Committee. What is true here is presumptively open. Right. So maybe let me just say, Mr. Storms, you've got 10 minutes. You reserve three for rebuttal, but out of the gate, just because it determines how we proceed. Do you have any objection to us not sealing this courtroom and lifting the seal in this case and lifting the and using the actual names of the parties going forward? Your Honor, I think if we just called Jane Doe, I think if counsel signed that. But why? We don't believe that it should be sealed at this point. Yeah, I don't see why it should be sealed. So I want to give you a chance, Mr. Storms, to weigh in on this. But I mean, this is a very public disciplinary action against an attorney. There's a presumption of open records. That presumption can be overcome in certain circumstances. But I can't for the life of me think of what that would be in this case. The loose case, Your Honor, is a reputational harm. When you're talking about an attorney and their reputation, there's very serious allegations here, lying to judges and things of this nature. And I think just the fact that if this was reversed, I think at that point it would be too late that this lawyer's reputation would be destroyed. Even if it's reversed, it's the fact that these salacious allegations were charged against We hear cases like that all the time where the damage is done by the bringing of the action and being public. That doesn't affect the fact that we have a constitutional duty to do what we do in public and not decide cases in that way. Whether we – I mean, you can argue, maybe there's a reason to refer to your client as Jane Doe, but even then, the documents that we're ruling on are presumptively, at least the last time this report was there, are presumptively open. You can't do anything about that. Your Honor, to that point, I would just note for the record, there was a motion to stay the imposition of the penalty in the district court that was filed on this court some time ago, which was denied, which I think further informs the fact that there's really no reason for there to be further sealing at this point. All right. So, I'm not going to close the sealed court room. I'm not going to shut down the feed for the oral argument. I'll make that clear when we go forward with whatever decision we issue, but I just – we need to cover that before we start. Okay? Anything you want to say before we now proceed? No. Okay. Thank you. So, Mr. Storms, so let's now get to the merits. You've got seven minutes out of the gate with three for rebuttal. Good morning, Your Honors, and may it please the Court. My name is Derek Storms from Solomons & Storms, and I represent the appellant in this action. This matter concerns one of the most important rights in our Constitution, and that's the right that a defendant receive adequate notice prior to being charged with a criminal or disciplinary proceeding. In this action – Is your argument that the notice here is the same as what would be required in a criminal proceeding? Yes, Your Honor. And I think this Court has held that in Peters and subsequent cases. Even going back to the Supreme Court in Ruffalo, the Court said that when an attorney's – an attorney grievance committee is similar to a criminal case, and the Second Circuit has expounded on that in several cases. So I would say yes, that it is the same standard. All right, you may proceed. The appellant was subject to a self-initiated disciplinary proceeding. That's important because I believe that affects the scrutiny. Because it was self-initiated by the committee, the case law in Peters says that there's a heightened standard of review because the committee was – you know, started it, controlled the fact-finding, and controlled the sentence. So just out the gate, I just – we believe that it's a heightened standard. And we believe that the case should be reversed on two reasons. One, there was a lack of notice, and two, that the proceeding was fundamentally unfair. And I'll go through the facts because in these due process cases, it's very fact-intensive. Before you go there, can I just ask quickly, what is it that you want here? My understanding is the suspension has already been – is concluded, the time is up. And so what's the remedy you're asking for? The remedy would be that it be reversed and that, you know, we could have something, corrective action taken, but the remedy would be that it be reversed so that she could be given a fair trial, if that's the case, if the committee wants to have a second go at it. But we would request that it be reversed just on due process grounds because she didn't have a fair hearing. And I'll go into why we – why I believe the hearing was not fair. The committee initially started the grievance with a charging statement. It included a litany of several charges under Rule 3.3. There was no subsection. There's at least six different types of charges that can be charged under Rule 3.3. Therefore, at a pretrial conference, the appellant's counsel requested that a more definite statement be made so that she would receive fair notice to – of what the charge would be. There was a hearing, and the judge looked at the facts, and the judge said, I agree, it looks like the charging statement is not fair, it is not clear. And the judge, in order to resolve it, had a conference with committee counsel. Committee counsel agreed to provide a pretrial memorandum that set forth clearly specifically what the charge would be and include the subsections of the charge so that the appellant would know exactly what the charge would be at trial. Committee counsel did that prior to trial. A pretrial memorandum was provided. In the pretrial memorandum, it did not include a false statement charge. A false statement charge is under Rule 3.3, subsection A. That was clearly not in the committee's pretrial memorandum. That's undisputed. Well, it's in the statement of charges, right? There was an initial statement of charges that just said Rule 3.3. For having misrepresented the composition of a law firm to the district court. That's correct, Your Honor. But what happened after the fact is at the pretrial conference, specifically what that was done was to narrow the charges, so some charges would be narrowed and some would be clarified. And the pretrial memo was to encompass all the charges at trial. So I don't think the judge wanted the appellant to look at the initial charging document and look at the pretrial memo. I think the pretrial memorandum was to encapsulate all the charges. The due process requires fair notice of the charges and the statement of charges. I think you just acknowledged it included a misrepresentation about the law firm composition. Why does the memo somehow supersede that and render notice inadequate? This is why. Because the memo was a stipulation by the committee which was to do two things. Clarify the charges and narrow the charges and make very clear exactly what the charges would be at trial. So by not including a prior charge, which a committee could have more charges and then reduce charges, by not including that prior to trial, the appellant did not prepare for it. In other words, the appellant didn't see that as agreed to, didn't see that charge, so that wasn't what they prepared for a trial. So in other words, and this is what the court specifically requested, was for them to narrow the charges. That was clear. And by doing that, the appellant's counsel believed they were narrowing the charges. That's what it was stipulated to. So essentially what the committee did is they narrowed the charges in the pretrial stipulation and then after the trial commenced, they expanded the charge by including a charge that was not in the pretrial memorandum. So at that point, appellant's counsel objected during the hearing and the judge allowed it to proceed. The trial judge stated basically along the lines of we'll work it out, we'll see what happens. Appellant's counsel said that doesn't cut it. That doesn't cut it for due process. We haven't prepared witnesses. We haven't prepared her case. Basically we're getting blindsided and ambushed with a charge that was not included in the pretrial memorandum of law, which is what everybody was on page with. That is what would be the charges at trial, including the judge. And even in . . . The statement of charges are the charges, right? I'm not sure I follow why you suggested the pretrial memorandum, which is designed to just sort of identify what the evidence is going to be so that there can be objections in advance and the trial can be done efficiently, supersedes the statement of charges. Would you raise this for Sam? That was a stipulation by the parties, and that was what was agreed to. What was the stipulation? The stipulation was at the pretrial that this is what occurred. Appellant's counsel wanted to do a motion to limiting, wanted to do a motion to dismiss. The way the judge resolved it was she said let's get everybody on board with the charges. Let's do a pretrial memorandum. And the committee agreed. Actually, on page 160 of the record, line 2, the committee said absolutely, judge. It was clear that everybody was on the page and that's what they were doing. So even though at some point procedurally the initial statement encompassed some charges, some were vague, that was clear, later procedurally it was all agreed by all parties that the charges would be . . . So I believe in what due process requires is fundamental fairness and a fair proceeding. One can at one point include some charges, take them away, and then include them again. That's ambiguous, and actually committee counsel agreed to it. Committee counsel admitted that the process was ambiguous. I don't think ambiguous comports with due process. And as noted, at trial, the appellate counsel wasn't prepared. So that's why we feel it should be reversed. The procedure looking at the totality of everything that occurred from the initial charging statement to what happened at the pretrial conference to what happened at the stipulation, looking at all of that context, it's not fair to include a false statement charge, which is a specific one in question. It's the most serious charge. It's not fair to include that charge when that charge was not in the pretrial memorandum. Can I ask you a question? Yes. Out of curiosity, is your client still practicing in the Eastern District?  My client is currently in a coma, Your Honor. What happened after this is my client pretty much got suspended from everywhere. She was in Florida, barred in Florida and other places. She was an immigration attorney. Basically, because of the Eastern District, she had to let all her other bars know about it. So she stopped practicing law. She went down to Texas to essentially start a farm is what I think she was doing. She was doing some stuff, farming stuff. She got in a car accident, and she's been in a coma since. I'm sorry. Yes. If there's no more questions, I'll reserve my rest. Okay. Well, you've got three minutes for rebuttal. Thank you. Mr. Jackson, you've got ten minutes. Thank you, Your Honor. May it please the Court. Randall Jackson on behalf of the Disciplinary Committee for the Eastern District of New York. Your Honors, I think that we have set out the essence of our disagreement with counsel for Ms. Dimitriotis in our brief. There are just a few things that I would highlight. One, I don't think that there was ever a point where there was any stipulation between the parties that what was stated in the pretrial memorandum would somehow negate the fulsome description of the charges that was given in the charging document. Moreover, even if the court could somehow credit that, and that didn't happen. I was counsel of record in the district court, and that simply did not happen. But even if there had been some confusion on the part of Ms. Dimitriotis about whether or not the pretrial memorandum somehow narrowed the charges, there could have been no prejudice to her, and there is no way that counsel for Ms. Dimitriotis in the district court, who is probably one of the most sophisticated and experienced counsels in terms of this area that works in the New York State courts, could have been confused about what was going to be presented at the hearing. Ms. Dimitriotis was questioned about it by counsel for the committee during her deposition. We provided Ms. Dimitriotis' attorney with witness statements from the witnesses that we had interviewed, including Marilyn Pierre, who was the alleged associate that Ms. Dimitriotis lied to the court about. We provided exhibits, including the transcript of the conference that was in question that they claimed that they were not on notice of. And I think it's also important just to note, it's impossible to imagine what different course of action Ms. Dimitriotis' counsel might have taken at the hearing. She was called as a witness. The question for which they claim there was a lack of notice, which, by the way, Your Honors, was a very, from my standpoint, a very small part of what was a very, very broad accusation of multiple types of misconduct engaged in by Ms. Dimitriotis in front of numerous judges in the Eastern District of New York. But that conduct, that lying, which was a blatant lie to the court about whether or not Ms. Pierre actually worked at her law firm, I can't imagine what other preparation they could have engaged in with regard to that. She was called as a witness. She had testified in a deposition during the investigation. She was allowed to testify at the hearing. We, even though she was a witness that we intended to call, as a courtesy to counsel for Ms. Dimitriotis, we allowed them to call her first and get their entire case out. We conducted cross-examination. Do I take it that the Agreements Committee holds its hearings in confidential circumstances? I mean, that's the regular approach to agreements with managers? Yes, Your Honor. And I'll note there is, there aren't that many full trials of this nature that take place. And because they are typically handled in a confidential manner in order to protect the reputation of attorneys who are subject to grievances, I can't claim to have a fulsome knowledge of how every proceeding has been conducted. But my experience with the committee suggests that is the way it's typically done, and it was done here that way. Right, but then the committee makes a public announcement, right? And Peters' cases are similar to this one. Southern, I think, as opposed to Eastern, but they're similar agreements committee set-offs, right? Yes, Your Honor. Okay. I would just also note very briefly, Your Honor, I think that one of the first questions that the court posed to Mr. Storms was whether they were arguing for a standard that was as extensive as the discovery, as the due process requirements under the notice requirements under criminal law. What they are essentially arguing for, what Ms. Gerard is essentially arguing for in her brief, is something I would say that goes far beyond the notice that is required under criminal law. I think the cases that we cited in our brief, both the Dupre case and the D'Amelio case, which is a case I argued in this, which is a case I tried in the district court, is they go to the point that even in a criminal case, the indictment itself is not required to spell out every little bit of information that could come out during the course of the trial. In this court, in multiple decisions, including the Jacobs decision and also in Peters itself, noted that the notion, in Jacobs, this court noted that the notion that an attorney subject to a state disciplinary proceeding enjoys the full panoply of federal constitutional protections that apply to a criminal defendant is groundless. I think they're arguing for quite a bit more than a criminal defendant gets under the Constitution and under this court's precedence. If you apply the law as has been stated repeatedly by this court and by all the courts that have examined this issue, it's quite clear that she got much more than what is necessary under the law, and really an abundant amount of discovery and notice of the specific charges that were issued here. If there are no additional questions, I'll rest on our brief. Appreciate the court's time. Thank you, Mr. Jackson. Thank you, Your Honor. Mr. Starks, you've got three minutes for rebuttal. So, Your Honor, one thing to mention is, and this is on page 178 of the record, this is a quote from committee's counsel. The parties have met and conferred, and counsel for the committee has produced documents consistent with the party's agreement. This is in committee counsel's pre-trial memo of law. Consistent with the party's agreement about what? About what exactly would be presented at trial. Well, Mr. Jackson just said, I think, that the exhibits pre-trial included a transcript of the Pierre statements that you're saying you didn't have notice of, right? Well, I think there's difference between what charges are going to be done, and as what the court said is when a court asks you to identify what are the charges, that's one thing. Because that's what they're required to do, list the specific charges and the numbers. The charges were 3.3. I mean, the charges, the statement of charges were very clear on this. Misrepresented the composition of a law firm to the district court, right? Your Honor, that was the initial charge, but there was other charges. It said 3.3. Under 3.3, there's other sections. There's six subsections under 3.3. That's what part of the problem was. And they can vary from making a false statement to... It was not clear that the Pierre statements were going to be fair game at this hearing. It seems to me that that was a very serious allegation of a misrepresentation to the court. And the exhibit of the transcript of that exchange of that statement in court was identified as an exhibit for the hearing, right? Well, Your Honor, that's a piece of evidence that they wanted to use an exhibit. But what we're getting at is the notice. We're not getting into the evidentiary material. We're getting into the notice prior to the hearing. And the agreement was... But you had the exhibit prior to the hearing, right? I don't know exactly what point. I'm sure it was at some point in time it was done. And I think there was other exhibits introduced at trial. I mean, I wasn't in trial, but what we're getting at is the notice, the pretrial memo. The court specifically said, and committee counsel agreed, we will provide the exact charges irrespective of what is done in the initial charging document. We are going to provide the exact charges. That's an agreement. That's on page 178 of the record. And then going to what committee counsel said, the appellant did have very experienced trial counsel. And this is what he said at trial. This is page 460 of the record, lines 19 to 22. We just recently learned that the judge is citing for a misrepresentation which is not in the charge. Essentially what's going to happen is that our prior preparation is down the drain. The reason he said that is because there was an agreement between the parties which the judge put together and the committee agreed to, which is very important, that the committee would narrow the charges and clarify the charges in its pretrial memo. By not including the false statement charge in its pretrial memo, essentially, in fact, what it did is appellate's counsel did not think that the committee were including that charge. So, yes, at some point in time, maybe that charge months ago or maybe a year ago, an initial charging document might have been there, but one or two months before trial, it was not. And that is the document that all parties had agreed to and the judge that would define the scope of the trial. So what is the prejudice? The prejudice is that my client and her attorney were not prepared for this charge. But what is there to prepare for? I mean, this is something that certainly everybody knew about. There's testimony. There's an exhibit that summarizes the testimony of the statements, rather, at a hearing. So I'm not sure what more time would have enabled you to do what? Well, this is what I believe would have allowed. If you have notice of a charge, it allows you first to explore the charge, strategize with your client, get witnesses, get evidence. So what is this to say what? I mean, I'm just trying to think. I mean, is this to say what, that this is a bad transcript? Not a bad transcript. This is what requires is venal intent. So under this charge 3.3a, it's saying that you made a false statement to a court. Now, essentially what the judge said is Sue Sponte, in the courtroom, the appellate referred to someone as her associate. Now, this was somebody that had worked for her for a long time, years, and the judge said by you referring to this person as your associate, you're lying to me. In other words, you should have maybe called her, I don't know, employee or something else. So it was a very nebulous charge. This was not a very clear-cut thing like she had, you know, done some flagrant lying. The charge was she referred to Ms. Peer as her associate. So... And that she worked out of the same office, no? I don't... If there was more to it, I think you might be minimizing a little bit. It was essentially that. I think working out of the same office... The question posed was, was she a contract attorney? And the answer was no. She's an associate attorney with my firm. Yes, and I believe... It's not loosely using associate to include other possible terms. It's denying that she's a contract attorney and saying that she is an associate with the firm. Your client then acknowledged at the evidentiary hearing that she knew the difference between a contract attorney and associate. She knew the difference. And I think that under the circumstances, this was somebody that... This wasn't the first case. This wasn't just a per diem. This person had appeared dozens and dozens of times. This was her exclusive person that represented her on numerous, numerous cases. To have a court asking you questions about whether or not you have the bandwidth and the wherewithal to represent this client and other clients in the district court, and the court asks, who is this other person? Is this a contract attorney? You say, no, no, no. That's an associate at my firm. How is that not misleading? Or how is it not a fair inference to conclude that this was a deliberate attempt to mislead, to overstate the presence that Ms. Dimitriotis had in the district? Your Honor, that's why I think it's so essential, given that charge. It's so essential that an attorney knows about that charge in advance so that they can come to at least a trial strategy before trial and not have a trial by ambush. Now, maybe in the end, the result would have been the same. But that's not what we're arguing. We're arguing that due process requires notice prior to the trial. And in Peters, the charge was one day before. But I asked you how your client was prejudiced. And now you seem to be saying she was prejudiced because she didn't have notice. Yes, she didn't. So what would be the response to that transcript? The response? No, Your Honor. I was not prior counsel and my client is in a coma now. But what I would say to the court is I would have spoken to my client about this and got all the facts, evidence, witnesses, and things of that nature to try to demonstrate, okay, is she an associate? Is she a contract attorney? But at least be able to amount to defense, which is, I believe, what due process requires. It's the minimum just to be able to have notice and to amount to defense. And that's all I'm saying. And I believe it's not as clear cut because even if it wasn't associate, what the law requires is venal intent, which is even if somehow she wasn't an associate and she somehow on the spot, this wasn't a written document. This was a statement in court that the judge said to her, is your associate? Maybe she misspoke. But maybe it's true that she wasn't an associate, but did she have venal intent? Because there's an intent aspect to the charge. And I think that that's something that my client did not have the ability to defend against at trial because they didn't have the notice of the charge. And I think even the court, even if it's a contract or associate, on the spot when a judge asks you the question, maybe you make a mistake. I don't know, Your Honor, but I don't know if she had venal intent. But I would just ask that she be given fairness. And that's really what this is about. Just fundamental fairness that she be afforded a fair opportunity to amount to defense. All right. Thank you, Mr. Storms. Thank you, Mr. Jackson. We reserve decision. The other two cases on the calendar are on submission. So that concludes today's arguments. We thank the council. We thank everybody who was here today. And let me especially thank our corporate deputy. Ms. Beard, you may adjourn court. Do I stand adjourned? Thank you.